INSD Pro Se Employment Discrimination Complaint 6/24 (adapted from AO Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination)

# UNITED STATES DISTRICT COURT

for the

## Southern District of Indiana

*Xena M. Ames*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Plaintiff(s)

*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

-v-

*Common Wealth Hotels*

Defendant(s)

*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)*

Case No.

1:25-cv-00869-SEB-MG

**FILED**

MAY 0 5 2025

U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA   CCG

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**Demand for Jury Trial**    ☒ Yes    ☐ No

---

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date, the full name of a person known to be a minor, or a complete financial account number. A filing may include *only*: the last four digits of a social security number, the year of an individual's birth, a minor's initials, and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievances, witness statements, evidence, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

INSD Pro Se Employment Discrimination Complaint 10/21 (adapted from AO Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination)

## I.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:



Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*



Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*



Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Other federal law *(specify the federal law)*:

_____

☐    Relevant state law *(specify, if known)*:

_____

☐    Relevant city or county law *(specify, if known)*:

_____


## II.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name                Xena V. Ames
Street Address      17090 Eagle Eye Way
City and County     Indianapolis, IN
State and Zip Code  46234
Telephone Number    317 799-8942
E-mail Address      Boyleshop2020@gmail

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, a corporation, or another entity. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1
    Name — Commonwealth Hotel
    Job or Title *(if known)* — Robert Hudson
    Street Address — 100 E. River Center Blvd Ste 1050
    City and County
    State and Zip Code — Covington, Ky 41011
    Telephone Number
    E-mail Address *(if known)*

Defendant No. 2
    Name — Linda
    Job or Title *(if known)*
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address *(if known)*

Defendant No. 3
    Name — Sarah & Kim Jennings
    Job or Title *(if known)*
    Street Address
    City and County
    State and Zip Code
    Telephone Number
    E-mail Address *(if known)*

**C.**     **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

**A.**     The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [x] Failure to hire me.
- [x] Termination of my employment.
- [x] Failure to promote me.
- [x] Failure to accommodate my disability.
- [x] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [ ] Other acts *(specify)*: _____

    *(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

**B.**     It is my best recollection that the alleged discriminatory acts occurred on date(s)
    10-01- 24

**C.**     I believe that defendant(s) *(check one)*:

- [x] is/are still committing these acts against me.
- [x] is/are not still committing these acts against me.

**D.**    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☒    race    _____

☒    color    _____

☒    gender/sex    _____

☒    religion    _____

☒    national origin    _____

☒    age *(year of birth)*    _____    *(only when asserting a claim of age discrimination.)*

☒    disability or perceived disability *(specify disability)*

_____

**E.**    The facts of my case are as follows.  Attach additional pages if needed.    ATTACHED

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

INSD Pro Se Employment Discrimination Complaint 10/21 (adapted from AO Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination)

### IV.     Exhaustion of Federal Administrative Remedies

A.     It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

B.     The Equal Employment Opportunity Commission *(check one)*:

☐     has not issued a Notice of Right to Sue letter.

☒     issued a Notice of Right to Sue letter, which I received on *(date)*

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.     Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐     60 days or more have elapsed.

☐     60 days or more have not elapsed.

### V.     Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

### VI.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     05.05.25

Signature of Plaintiff     _Xenee K. Ames_____

Printed Name of Plaintiff     _Xena K. Ames_____

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**IN THE MATTER BETWEEN**

**KIM AMES - CHARGING PARTY**

**COMMONWEALTH HOSPILATIY, LLC – RESPONDENT**

**EEOC CHARGE NO. 470-2025-00145**

**Charging Party**

## I.    INTRODUCTION

Commonwealth Hospitality, LLC employed CP 1-15-24 as a night auditor.  CP is charging the respondents for discrimination and retaliation while protected under the EEOC.  CP filed a discrimination charge on 7-25-24 case number # 470-2024-05071 after being severely harassed, discriminated, age discrimination and fired while protected under the EEOC.  After being terminated on 10-01-24. CP then filed a retaliation claim case number # 470-2025-00145 on 10-08-24.

## II.    ILLEGAL RETAILATION, FORGING SIGNATURE, RACIAL DISCRIMINATION AND HOSTILE WORK ENVIRONMENT.

Due to CP being protected under the EEOC the respondents firing CP as an adverse action of retaliation is unlawful.   It is illegal to fire someone because they filed a complaint against a company or if the employer feels the employee is a whistleblower.  Federal and State laws protect employees who fall under these protected classes.  Respondents (Kim Jennings)

accused CP of creating a hostile work environment because she made complaints, and instead of researching and watching those handy cameras that are installed management basically called CP a liar and said that she was providing misleading information.   Kim Jennings and Sarah (manager) both fired CP for filing a claim for a hostile work environment and more.  According to the U. S Equal Opportunity Commission (EEOC) a hostile work environment involves unwelcome conduct that is based on race, color, religion, sex national origin, age (40 or older) disability or genetic information.  Also, a hostile work environment occurs when enduring the offensive conduct becomes a condition of continued employment" or the conduct creates an environment that a reasonable person would consider intimidating, hostile or abusive.

III.    **Management states Subliminal messages are catch phrases and leading misinformation and is not real and that CP is basically a black liar.**

Freedom of speech is protected by the first amendment. But Subliminal messages also known as deception is not protected by the first amendment and if subjected to this type of behavior the plaintiff or CP has the right to file a harassment case. *Nicole Grattan Pearson, s. Cal. interdisc. LJ 4, 775, 1994.*  CP was issued a right to sue letter against Commonwealth due their outlandish lies and discriminatory behavior case number # 470-2024-05071.

Management states in their respondents statement that subliminal messages are only catch phrases.  Subliminal messaging is a non-verbal and verbal way to speak to people in code.  The military uses the "NATO phonetic alphabet", to send messages in code to their troops without everyone knowing about the message that is being sent it was created to reduce

miscommunication.   Subliminal messaging is another form of communication that is sent in code to cause distraction, confusion and hostility in the workplace. *Subliminal messages liability, Pamela Marsden Capps, Column. Bus. L. REV., 27, 1991.*

Respondents discriminatory traits continue to show as they state that CP does not know how to present information and is dishonest and misleading.  This statement is so racist and rude, but this goes to show the type of management is leading Commonwealth.   This slick comment is another epithet that companies use to persuade investigators that African American women are not intelligent. This statement shows that the Respondents have no regards for women of color and believe that AA are ignorant and stupid.  This is such a discriminatory statement that needs to be considered into this investigation.   Due to the fact that Ms. Jennings never met CP prior to the 10-01-24 meeting the company attorney is writing based off the information that Ms. Jennings reported, which is not factual.   Ms. Jenning is basing her "judgement" on CP as a black women that she saw by video.  You can't make judgements on another human being from one meeting unless your racist and no matter what they say will be wrong if reported against a Caucasian woman, thats treating another race favorably. *Preferential treatment, Richard Wasserstrom, proceedings and addresses of the American Philosophical Association 61 (1). 27 -42, 1987.*

Respondents never even took the time to investigate "PROPERLY".     I have never met Ms. Jennings in my life besides that meeting on 10-01-24 or her attorney for her or him to make that kind of statement that I am a dishonest person and providing misleading information.  I only met Sarah a few times and her management skills are not impressive as this could have been resolved way before this got out of hand.   Conflict resolution 101 teaches you how to

deescalate an issue in management.    *Conflict resolution strategies in multicultural groups, journal of managerial psychology 25, (5). 539-554, 2010.*

Many companies include this tactic in their company handbooks as subliminal messages are a form of harassment.  If used inappropriately can be discriminatory and cause conflict in the workplace.  It is management job regardless of how frivolous the complaint is to create prevention; "avoid liability" for a hostile work environment.  Prompt action is necessary when harassment or even a complaint is made. Check response times from date of complaint and when it was resolved.   Throughout my complaint you notice nothing was ever done to help CP and that basically management dismissed all claims as "misleading allegations".   This company is not knowledgeable enough to know that subliminal messages is a form of harassment if used in the wrong way can create a hostile work environment. The handbook doesn't even prevent subliminal messages, gestures, epithet as most companies use this as one of their #1 tools to eliminate any possibility of harassment, retaliation and discrimination.  Without this type of verbiage in the handbook allows older employees like Linda to use it as a weapon in the workplace and try to get away with running off unwanted employees.   Linda adamantly used subliminal messages on a daily basis as a way to run off CP. Management didn't even check the cameras to confirm or deny that this was happening they stated in their report that CP provided misleading information which means no cameras or investigation was done before our meeting. Cameras don't lie; people do and if this company was really interested in what was going on they would have done their due diligence. In the meeting, CP asked if they watched the videos to validate harassment and Sarah and Kim stated they don't have time to watch videos there running a multi-million-dollar company.  (recorded) Which shows that the company is protecting

the Caucasian employee but removed CP due to her race and then called her a liar. The fact that the company does not have this policy in their handbook means that Commonwealth "**actually supports**" this type of behavior and more than likely put Linda up to harassing CP to have her removed. CP wasn't removed because of misleading information she was removed because of her race, and it was very dramatic, just like the black housekeeping supervisor, his was more in public and very nasty.

Due to Lindas age she is aware of the power of subliminal messaging, just as well as management this communication system has been around for ages. Subliminal messaging is used in everyday life designed to influence, cause attitudes and cause distraction in the workplace. Subliminal messages can have an effect on a person's thoughts and behaviors. For example, Advertising companies use subliminal messages daily to get their messages across to customers and in some countries it has been banned because it is misleading to the consumer. Subliminal messaging is used on highways, if I give you the finger while driving on the highway that's considered a "road rage" and is unlawful and it's a strong form of subliminal messaging that's not allowed on the roads because it's a distraction and **should not be allowed in the workplace**. _Why we snap, understanding the rage circuit in your brain, R Douglas Fields, Dulton Book, 2015._ Evidence dating back to the 1960's suggest that subliminal messages can be effective and can be used as a form of brainwashing and if used in the workplace can be a way to target employees and cause harassment and discrimination to get them to leave. Statistics show that subliminal messages can cause depression, if done often enough and in this case Linda's behavior was daily, with no conflict resolution from management can cause harm. CP sent messages to management to ask for help, but Human Resources didn't resolve the issue

they fired CP for filing an EEOC charge.   Ms. Jennings made CP aware in meeting that they

received the first EEOC charge, and that she didn't care about that. (recording) as the meeting

progressed Ms. Jennings expressed that CP is not a team player and for that reason CP must go.

Two days later Ms. Jennings sent a termination letter to make CP removal official.

IV.    **Physical assault/ workplace violence, Recording devices and why?, Discrimination,**

       **retaliation and Forged signatures**

Examples of offensive conduct, physical assault, interference with work performance, &

insults or put downs is what CP endured during her employment.   The work environment

became so hostile that as an African American employee CP had to tape record management

and employees to protect herself.   CP was threatened by an employee on commonwealth

grounds with a gun, no notice or information was sent out to protect our safety.   CP car keys

was stolen off her key chain.   CP was physically assaulted by favorable employee.   CP was

subjected to epithets and discrimination daily about not drinking out the same coffee pot as a

"Nigger".   Linda would make Jose change coffee every morning for her, this was reported and

went on for months.   Due to these situations CP protected herself by making sure, she voice

recorded at all times.

(A).

CP was physically assaulted by co-worker Linda with manger Sarah standing there looking and

not protecting CP.   Physical assault in the workplace is a serious issue, workplace violence is

physical and regardless how minor the issue is should be taking seriously. No incident report

was made in regard to this issue. _Workplace assault: an emerging job stressor, Consulting_

_psychology journal: Practice and Research 47 (4), 205, 1995._

 Sarah understood the animosity between Cp and Linda but allowed the situation to slide in

Linda's favor this is discrimination.  When accidentally stepping on someone foot, that means

your balance was off and as an adult you instantly say excuse me, if raised properly.  Linda came

from the front desk to the back at this time of the morning its Linda's shift, she is supposed to

be maintaining the lobby and making sure the guest was ok, as customers was standing there

waiting as Linda was arguing and shouting about "Don't open my locker" that also didn't have a

lock.  Linda concentration was on me and walked into the breakroom slowed down and twisted

her foot on top of mine. I am a disabled veteran and her little outburst about her locker caused

me injury to my foot that required me to have to take hydrocodone medication to relive the

pain in my foot that night.   She applied so much pressure that I cried, but I kept my composure.

I knew my environment was predominantly white and I would have been locked up in jail if we

fought so I kept my cool.   CP remained calm and walked to the other side of the room; in the

recording you will hear Lindas voice from a distance because I removed myself to deescalate the

incident.  After that happened another incident happened, and Sarah blew it off.   When you

listen again in that recording Sarah and CP are talking and CP standing by printer, Linda

interrupts the conversation to loudly say "EXCUSE ME" after the locker room incident, I need to

get that document off the printer. CP is standing by the printer, there is a printer that worked all

night on the front desk.  CP pointed that out again to Sarah manager and she ignored it then

said to CP I don't like what you did to Linda.  It is CP's belief that someone didn't like CP and

brought Sarah up to speed on all employees and Sarah made her judgement off of another person's assessment and the manager that was around was (Erin).

Respondents state this was all a pure accident and Linda didn't intentionally cause CP harm. Well, I was harmed, and her actions was deplorable and very unbecoming as a front desk clerk. Linda disrespect towards CP was so strong that it seemed like she was being coached, she was very confident in her actions toward CP.

(B).

Linda and Bret are really good friends and sometimes Bret would tell CP things that Linda would get from management. Bret asked me are you a veteran? I said yes. He said be careful because Linda doesn't have those things and can become very jealous. Picking a fight with me and having me locked up is funny to these women in this "hate crime". So, stepping on CP foot was her way of trying to pick a fight because if I would have hit her, this situation would have been different. Linda's conversations with Erin would always come back to me as Bret asked me after getting a $1 raise did you get a raise because all night staff should be compensated. Bret stated that he didn't receive anything. I refused to answer as the only person I had that raise conversation with was Erin. CP feels that a lot of the animosity stemmed from Erin, as she did not like CP for whatever reason and would communicate with her subliminally through the clerks email system and notes for front desk. If CP found answer to problems and reported it back to the team on how to resolve it, Erin felt I was stepping on her toes. When CP knew something, and they didn't they would get mad and ask how does she know how to do that. CP was given a 1-day training course when the hotel opened and no other managers knew how to

do anything, actually they was asking me questions as I would call the 1-800 Hilton number at

nighttime to train myself on how to operate the Commonwealth system.  Corporate office had

me train new employees because I was knowledgeable of my position and didn't have any

incidents or complaints.    I trained myself using this number and asking questions because

there was no manager on night shift, and no one was there to help me.  No managers in the

morning and no managers at night.  Sarah said if you don't hear from me that means your doing

fine.  If I asked Erin a question she didn't know, and she would get an attitude with me. So, I

called the 1-800 number if I ran into problems in the middle of the night, and did not disturb

management.  My job was done efficiently even on the night before the meeting.  The 1-800

number records all calls, and if I needed help that's who I reached out to 1-800-Hilton.    So, if

management had a problem with how CP did her job, blame it on your training system through

Hilton/ Commonwealth.   Respondents stated that CP was not meeting legitimate expectations,

Sarah never mentioned anything to me in regard to not meeting job requirements. Erin never

mentioned anything about not meeting job requirements.  The morning before being fired CP

asked Sarah what the meeting was about and Sarah said Kim just want to touch base with you,

and she will not be here today as she injured herself, so come into my office.  (recorded).  CP

never signed anything in regard to not meeting company expectations.   CP was fired because

she filed an EEOC complaint.  Respondents have nothing in writing prior to firing me, stating

that I did not meet expectations.   But after firing me and breaking the law, they want to blame

it on CP not meeting the company's expectations.  Respondents state that CP broke the rules

and was dishonest, how would they know if they never investigated.  They never showed me

anything in our meeting and everything was recorded so CP is not the liar here its
Commonwealth and their management team.

Commonwealth stated that CP was not meeting expectations before firing CP. However,
companies that want to see their employees thrive in the workforce would inform their
employees that first by giving them feedback, and opportunities for improvement PIP
PERFORMANCE IMPROVEMENT PLAN. Usually if the employees performance don't improve
despite their efforts by coaching staff, termination would be the next step. A written write-up
should be presented to CP so that she can read and get a copy and management keep a copy for
their files. CP was never given anything in writing and was not ever verbally warned. In the
meeting on 10-01-24 the meeting did not start off as we are firing you because you don't meet
expectations, Kim lost control, got mad because she didn't like my answers. Respondents state
that this is a "AT WILL STATE" where employers can terminate employees for any reason, there
are expectations and guidelines to be aware of before terminating an employee in a "AT WILL
STATE". When using an "AT WILL STATE" its crucial that everything is documented, the reason
for the poor "performance" the "feedback" provided and the employees response to ensure a
legally sound termination. Again, this termination is unlawful and does not fall under "AT Will
State". CP was never written up, disciplined, giving a warning and I never wrote anything in
response to their legal considerations. Respondents are trying to cover themselves because
they fired CP for filing an EEOC complaint against their company, while protected by EEOC. CP
was fired, and their behavior was unlawful. Respondents have no true base for termination,
they did not follow their own protocol for termination. There are steps that must happen
before termination begins and because CP only met with Sarah maybe 3-4 times every

conversation was recorded.   Respondents are trying to incriminate and slander CP and cover-up

their wrong doings.  Commonwealth Hospitality discriminates against African American

employees and tries to create bases to safeguard themselves against penalties of the law.

(C).

   Respondents state that CP cannot prove that a non-African American was treated more

favorably.  Linda is Caucasian and she was treated more favorably than CP as CP was fired, and

Linda kept her job.  CP texted, left notes, emails etc.  Sarah said don't email me complaints

about Linda I don't want others to see in the C drive.   Respondents call CP a liar without

checking the data first.    Linda is a Caucasian female who had the same job, qualifications, and

conduct as CP.  CP has proven threw out testimony that Linda was treated more favorably due to

her race.  Lauren was treated more favorably than CP and was offered a lead position and had

only been there for 1 month.  Lauren's dad is friends with the owners, and she was given the

position, and it was never posted for all to apply.    CP has met her prima facie burden, and her

race discrimination claim should move forward with probable cause.

   (D).

   In Indiana, recording a conversation is legal as long as at least one person involved in the

conversation consents to it.  _Lopez V. United States 373 US 427, 83 S. Ct. 1381, 10 L ED. 2d_

_462-Supreme Court, 1963_ This is referred to as a one-party consent law, meaning the person

recording must be part of the conversation, to legally record without penalty.  CP then sent

all recordings to Kim Jennings and the next week Lauren (LEAD CLERK) asked that CP sign

company handbook with rules. After recordings was sent CP hand signed a green booklet

and dated it, this was not a computerized signature and slide the book under managements door as requested.  If any computerized signatures are on anything CP has the right to review it as a forged signature.

Respondents are trying to prevent CP from using circumstantial evidence that the judge would allow in court if incriminating evidence.   Incriminating evidence is any information or item that suggest or indicates a person's guilt in a crime and witness testimony can be added.  Again, the one-party consent law allows CP the right to protect herself.   After having a gun pulled on CP and car keys stolen, CP feels she has   the right to use the one-party consent rule and record to protect herself, without being malicious.

V.   **COMMONWEALTH RETAILATED AGAINST CP**

Commonwealth states they did not retaliate against CP; however, CP took legal action to shield her from retaliation from her employer, however Commonwealth feels they don't have to follow the law and fired CP while being protected and shielded by the EEOC.   CP filed a discrimination and harassment claim and it was not taken seriously.  Ms. Jennigs made a comment that your EEOC Complaint will not work, and I don't care about that. (recorded).

 CP continuously reported incidents of discrimination, harassment and retaliation.  Ms. Jennings was not reasonable in her thought processing and stated I don't want to hear about subliminal messages.   I also mentioned that Linda assaulted me, and Ms. Jennings said Sarah said no she didn't and you're lying.  (recorded).   CP also tried to exercise her right under labor laws by asking for a raise and was offered $1 and then it revealed to other staff that I had the nerve to ask for more money.  CP was then questioned by Lindas friend Bret if I got a raise immediately

after it happened.   The ADA (American Disability Act) prohibit discrimination based on disability. _American with disabilities Act of 1990 42 U.S.C. 12101 et seq_ management and Linda was aware of CP's disability and having Linda step on CP's foot caused aggravated assault. Commonwealth needs to face consequences for retaliation and discrimination, employers who retaliate against employees for engaging in protected activities need to face legal consequences. Commonwealth engaged in retaliation by not paying CP correctly this falls under statutory protected activities and should be required to pay back wages.   The court need to order injunctive relief to remedy the harm caused by Commonwealths actions.   In employment law a protected activity is a given right to each employee.  CP had the right to engage in protected activity without being punished.

 (2). Commonwealth subjected CP to an adverse employment action by failure to promote, being denied a promotion when someone in a similar situation and race was promoted.   The most severe form of adverse action was respondents terminating CP. _Dodge v. Evergreen School District, 56 F. 4th 767, 774(9th Cir. 2022)._   Loss of Pay was an adverse employment action, management cut into CP's monthly pay.   Ostracizing by co-workers, which was reported to management repeatedly. _McAlindin v. Cnty of San Diego, 192 F. 3d 1226, 1238-39 (9th Cir 1999)._ CP's retaliation claims should prevail, and respondents need to be held accountable for their actions.

Ms. Jennings stated that she fired CP because she was dishonest in her response and that she didn't like CP's answers to her questions.  Regardless of the answers it was Ms. Jennings responsibility to research before taking extreme measures.  Ms. Jennings did not do her fact findings before making a harsh decision to end CP's employment.   CP had been with the

company since the doors opened and had not missed a day of work, and the end result was

termination. CP worked extra, trained employees, helped in other areas, came in when the

hotel was booked to help clean rooms. And this is how CP gets treated; this was unfair as CP

loved her job and Ms. Jenning Rash decision was uncalled for and racially decisive.

Moreover, CP's retaliation claims was justifiable under Title VI. CP proved unlawful retaliation,

and wrongful actions of the employer. CP also demonstrated that she would have stayed

employed if management would have done their job and not fabricate the truth. Kim Jennings,

Vice President is not knowledgeable on EEOC laws and practices and became a total hot head in

the meeting. Ms. Jennings abuse of power was uncalled for and dictates that maybe

Commonwealth need to reconsider their Vice President as she is rude and unprofessional.

Commonwealth did not have a legitimate, non-discriminatory, non-retaliatory reason, to fire CP.

Ms. Jennings assumed that Linda was a perfect angel and based her decision to fire CP off the

color of her skin. Ms. Jennings made the wrong business decision because she did not officially

investigate my claims or take anything seriously she dismissed all my claims and just wanted the

EEOC complaint to go away. The meeting was recorded and what Ms. Jennings is stating is a

complete lie. Ms. Jennings stated I did not provide any supporting evidence anything I said Ms.

Jennings was in disagreement of it. Ms. Jennings never stated they watched cameras for

evidentiary purposes in the full tape-recorded conversation. The reason that they didn't

investigate was because they didn't care due to CP's race. Overall new management came in

made her judgement on who she wanted as employees and who could go. Sarah stood in that

break room and lied that Linda did nothing to me and even said if you would have called the

police I would have told them she did nothing.   Respondents treated Linda more favorably than

CP and the end result was CP was wrongfully terminated.

VI.        **Charges of Offensive Conduct, Discrimination, Retaliation and Wages**

    CP worked in an environment where she was mainly alone and protected the facility at night

alone without any security or locked doors to protect CP and other night auditors.   Although my

security was at risk and other night auditors as well, we continued to do our jobs after many

request to have doors secured on the property.   CP was an excellent employee who never

missed a day of work and was tardy maybe once.   CP clocked in and out every day and signed

her signature on clip board for attendance.   Respondents started shortening CP's Pay to have

her removed as a form of retaliation for filing a EEOC complaint.   CP reported these facts to the

Indiana Department of Labor as the Respondents never responded to their request for

information.  This shows another tactic to have Cp removed from her workplace, employees

come to work to get paid, not cheated out of their pay and then terminated without enough

funds in their unemployment account to draw benefits. So not only was CP wrongfully

terminated but was cheated out of her pay.   As of date this issue has not been resolved as CP

even asked for settlement amount. Also, because my pay was shortened it prevented me from

being able to receive unemployment.   My unemployment case was denied because I needed

$600.00 more to qualify for benefits.  Overall, I was cheated out of around $3,000, and this

company refused to respond to Department of Labor. **Respondents never replied.** (has this

been covered up).  This is an indicator that Respondents knew they were going to fire CP and

shortened CP pay by $600.00 so that company wouldn't have to pay unemployment benefits,

this is discrimination and retaliation.   If there was no wrongdoing then why no response to

Department of Labor.   CP was terminated and discriminated against for exercising her right to full compensation for the hours that CP worked.   Under federal wage and hour law, 29 U.S.C 2216 (b) any employer who violates federal minimum wage and hour law is liable to pay the charging party their full amount.   Indiana employees covered by federal wage and hour law "are" protected from termination and discrimination in retaliation for exercising their rights under the FLSA, 29 U.S.C 215 (a) (3).

VII.    **HOSTILE WORK ENVIRONMENT, RETAILATION AND DISCRIMINATION**

But before all of this occurred CP reported that Blake was bringing guns into the workplace and threatening CP to leave.   CP reported the incident that employee Blake had an oversized backpack with a gun inside and told CP "We don't need you here nigger".   I reported this incident to Patricia the Lead supervisor at that time and she reported that incident to Jessie the General Manager.   Because of HIPPA Rules CP was only told that Blake was removed due to his actions.

However, after that incident there was "NO" notification sent to employees letting them know that weapons are not allowed on the property.   Respondents allowed that situation to happen without providing any training or memo to employees that weapons are prohibited and would not be tolerated.   Blake and Linda was good buddies as she constantly reminisce about who will make us laugh know that Blake is gone.. Linda comments are rude and insensitive.   During this situation the company did not watch camera footage in support of CP, they took Patricia word because she is a Caucasian women supervisor.   Respondents

should have been alarmed that an employee had a weapon in the workplace, and they never supported me by asking if I wanted to make a police report as I feared for my life and the company remained with the same unsecure doors that open for any customer in the middle of the night. After firing Blake night staff was worried about Blake retaliating and coming on the job.   Respondents had us working in unsafe conditions.   After that incident occurred the workplace should have implemented a workplace safety policy to address the potential risks associated with firearms in the workplace.  Due to the fact that Blake was white, and CP is African American, respondents ignored this safety rule and did nothing for prevention.   Employers can be held liable if an employee is injured in a workplace incident involving a firearm.   When Jesse was told about the gun situation he said that Blake is a security guard and he can carry wherever he goes, it's not a violation.  I explained to Jesse we work in hospitality guns should be prohibited inside the workplace.

VIII.    **Harassment, Retaliation, Theft, offensive conduct, not assigning lockers per handbook.**

After Jessi resigning, this is when Linda began harassing CP, when Jessi was there Linda felt more in control because they was friends. After Jessi resignation we did not have an immediate General Manager, but Jessi was still helping out as he lived close by, and his new job was a work from home position.   I informed Jessi before leaving that my car keys was removed and that those keys was sentimental to me as that vehicle was giving to me from my deceased Mother. Jessi- Manager was in transition of leaving and told me "I don't have the time to look at cameras in regard to your keys". Jessi never passed that information forward to human resources.   CP reminded management that it's their job to provide a safe place for us to come to work and

store our items.   The handbook states that all employees should store their things in a locker

that is provided in the break room with a company lock, so they can have access if necessary.

However, CP was never assigned a locker until Sarah arrived and that turned into an incident,

and I still didn't get a locker.   CP had only one key to that vehicle, so it costed CP $800.00 to

have a new key made and change the steering wheel column in case someone was trying to

steal the Cadillac Escalade.  When Jessi was officially gone, they sent John from corporate office

to maintain the hotel.  On his arrival I informed John what happened, and he said he would

report this to human resources to find out what could be done.  John never got back with me

and never watched the hotel cameras, another manager letting things slide.  CP made a police

report at the Brownsburg Police department in regard to the keys being stolen.  The police

stated that he could not show CP the camera, but he would get with management to review

cameras, the police agreed that a safe place should have been provided for all employees.

Employers are not held responsible for things being stolen "IF" they provide a safe place for

employees belongings.  The company is going against their own handbook rules, which state

that each employee should be assigned a locker with a company lock to secure their items.   In

this case negligence falls on the employer as they are liable, it's the workplace responsibility

failing to provide adequate security, failing to respond promptly to CP concerns, failing to

provide a safe place for CP items to be stored.  Jesse the first general manager never assigned

lockers, the handbook states all employees should have a locker and a company lock.  Sarah was

informed of this situation and was trying to provide me with a locker in September and that's

when the situation in the locker room happened with Linda.  Overall, Sarah said the company is

not liable but if a safe place is not offered to employees and something gets stolen, it's the

employers fault and Commonwealth is liable for replacing my keys.   If the employee was

offered a locker and they didn't utilize it then the lost falls on the employee.  But in this case it

was reported to Jesse, John, Bryan, and Sarah and no one acted promptly to restore my keys or

help recoup the cost.

IX.    **WRONGFUL TERMINATION, RETALIATION, DISCRIMINATION, DISCRIMINATORY
AND RACIST COMMENTS.**

Shortly after John leaving a new manager came to assist until they hired a permanent

manager, and his name was Bryan from corporate office.   Bryan had to come in and fix

everything as we did not have enough employees to get things done.  The African American

housekeeping supervisor was fired, Blake was fired, Patricia Left due to company not listening to

her concerns.   And on each shift we did not have enough employees to cover the shifts.  The

hotel was new and needed a lot of work and I was there to help the company on all shifts.

Bryan called me to assist in the kitchen, mornings shifts, afternoons and I was the only night

shift auditor as Bret was no longer there he was on sick leave.   CP and Bret was the only ones

who worked nights as CP was part-time and Bret was full-time until he got sick.  CP covered all

night shift positions to support the hotel as corporate was knowledgeable of that and awarded

CP with money orders as gifts as appreciation from Bryan & Abby.   Bryan stated that I was his

best employee and was there for him every time he called.   CP knew that Bryan had to do

interviews and keep the company together, so CP assisted in covering any shifts needed to

support Commonwealth.  Patricia, the lead supervisor, was not there to make orders for the

kitchen CP assisted in the kitchen and also was given the company credit card to go shop for

breakfast items and help keep the building moving smoothly.   Erin-coordinator was made

aware of that and told Bryan not to give me those privileges as Erin did not like CP. CP made sure took a picture of the receipt of what she purchased, because CP didn't want to be accused of anything. After working hard and trying to get the full-time position because Bret at this time step down due to his health. I ask Erin if I could take the full-time position, and she said we are looking outside the facility first and if we can't find anyone we will take you into consideration. Again, I felt like I was being discriminated against by Erin for making that statement as I had no write-ups, I was never late, I had no customer complaints as I was tipped daily and even reported it to management as I was told I could keep my tips, it's the housekeepers who have to report tips. Eventually Erin came and asked if I wanted the full-time position as another outside applicant turned down the offer. So, I asked Erin for a boost in pay, and she said I would look into it. 3rd shift is the hardest position, and its imperative to stay awake and keep the company and customers safe. Management was aware that Bret-night auditor (Caucasian male) was sleeping at night, but he was never written up or disciplined, so if that's against company rules, why would CP be fired for reporting harassment. This is showing favoritism to another person of a different race. Blake and Linda would have extended stay employees watching CP as CP would hear them talking about CP. Jesse ended up kicking them out of the hotel because they was keeping up trouble and their rooms smelled horrible. CP kept herself busy and cleaned the facility at night and helped other departments like housekeeping and kitchen area as they ran late in the mornings and prepping and cleaning the bar for breakfast would be done before they arrived. Due to CP helping the kitchen so much, she was able to open the breakfast bar early for the moms who wanted to feed their children before their games as a lot of young leagues and parents visited the hotel. The coordinator of the teams would ask if I could open the

breakfast bar earlier CP asked Byran, and he said yes that's an incentive to the customer.  This allowed CP the opportunity to make connections with the teams and was tipped well for her efforts.   CP folded and washed clothes at night and went above and beyond her job description, cameras are evidentiary.

After Erin doing interviews and was not hopeful in her search for a new nighttime staff, Erin stated we can offer you $1 raise to stay on as full-time night auditor, as other clerks of different races made more than CP.  Commonwealth eventually hired a part-time night auditor, and CP was asked to "train staff".  CP again went above and beyond and trained the new hire so that CP would be able to have a day off.   Bryan was really happy in the time and effort I put forward to the company and again awarded me for my efforts.

 Linda and Erin seemed to be really close friends and Erin was managing the hotel also until a new manager arrived. It is my belief that whatever ERIN was feeling towards CP was rubbing off on Linda and when Sarah came made them all gang up on CP.     Due to Erin text, I felt discriminated against in how Erin looked for outside employees instead of using the employee that she had that was already working hard and asked for the position.  (READ TEXT).   Due to Erin only offering $1 made CP feel discriminated against when other employees of other races made more.

With CP only working around basically 3 employees the only one that was around my purse and keys was Linda. Management is trying to protect her due to her race, this is a form of racism and showing favoritism.  The cooks come in and go straight to the kitchen and 2nd shift would give me their report and immediately leave.   When Linda comes in after CP she is looking for

anything wrong she could report and checking night shifts filing box to see if I filed my documents for that night.  Linda would get into the habit of walking in and whispering "Nigger" to CP as she passed my chair before clocking the time clock.  She would whisper so her voice is not picked up by the monitoring cameras that are installed above the clerks desk area.  When reporting things to Sarah she would say you never told me that or I never received that text message.

 Every morning Linda would come in and get mad about me changing the coffee bar and then tried to tell Sarah that it's a violation to move around the coffee pots they must stay the original way we had them.  Actually, Sarah said she liked the way I changed it, but when Linda got mad Sarah had me change it back to normal.  Again, taking Linda's side, this was an ongoing thing for 1 month and Sarah did nothing to rectify this issue again. This company shows Linda a lot of favoritism.   When I made coffee in the morning for customers, Linda would come in and be loud and rude and ask the cooks to pour out my coffee and have them make fresh pots for her shift, this was "every" morning.  That's why we had to order coffee continuously because Linda was being wasteful and feels she is better than other employees because she is the morning clerk.  This was every morning and would yell to the kitchen "Jose…I'm not drinking her coffee" and other epithets it was wasteful and distasteful on her part. So, Jose got into routine and had pots of coffee prepared for Linda when she came in, so she would take her cup walk to the kitchen to get a cup of coffee instead of the coffee bar.   (check cost and ordering sheets).

X.      **HATE CRIME AND BULLYING**

CP complained to management that Linda was making rude comments and gestures about CP and saying that she had a body odor. The problem with a Caucasian female making epithets and being rude about how someone smells is a social problem that is more often than not, linked to patterns of racist behaviors. Lindas behavior is a copycat of a

"Hate crime" that was filed in Court, in regard to a Tort Claim. In this hate crime defendants violated CP's VA Medical Records. The information in CP's medical records was released and used as a weapon. Many of the actions that CP has reported about Linda is information that she is receiving from someone, related to that case. CP informed Sarah that Linda was involving herself into this case that was filed in the Court. Sarah asked why? CP was unaware why Linda would put herself in that situation, but it is a form of bullying. However, Lindas actions are identical to the complaints that was made on defendants in this court case. The case is based off a "HATE CRIME" and CP will be adding Linda as one of the defendants as she is assisting the defendants to keep this harassment on-going. Bullying has many forms that consist of name calling, violent attacks, hate mail, even hate email, verbal abuse, insults, assault, encouraging others to commit hate crimes, harassment, online abuse on sites like Facebook. This is all geared to dislike and or a prejudice due to age, disability, race, religion, sexual orientation. Due to the severity and the fact that CP lost her employment this will be reported to the FBI as a continuous HATE CRIME that resulted in CP losing her job.

Bullies don't report, they taunt and tease, so Linda probably never reported anything to Sarah but went out of her way to harass CP and intimidate her so that she would leave and not have employment. CP doesn't want to reveal any more information in regard to this Hate Crime case until speaking with EEOC investigator and FBI Agent.

XI.    **Reasonable accommodation & Hate crime**

Management did not investigate when CP told Sarah that Linda was making rude comments and gestures about CP.   Under the Americans with Disabilities Act employers cannot discriminate based on a employees disability, even if that is a major bodily functions.   Employers are required to make reasonable accommodations to help disabled employees.  Sarah was told that Linda was making rude remarks, but Sarah did nothing and never investigated the situation. Linda was discriminating against a disabled veteran based on her disability.  Linda had Bret ask me if I was a disabled veteran because she didn't understand why I was able to park up front for everyone to see in the handicap spots.

Lindas' discrimination didn't stop there by stating she had a body odor.  Linda went as far as Screaming in the break room making sexual noises, sending subliminal messages.  When at the front desk would come and stand in my area with her coffee pouring in sugar and saying comments like "That's how it happened".  Or making comments who raped these apples. Highly in appropriate!!! CP brought these concerns to HR in our meeting and Kim Jennings said none of this is happening and unless you have witnesses like customers who overhear this, I don't want to hear about it again.   Ms. Jennings was talking to me like I was a "SLAVE".  Even if no one is in ear shot doesn't mean it's not happening.  Gestures and comments about how I smell is not ok and Sarah was informed and never asked me questions and never came in to investigate it.

As a disabled Veteran if this is part of CP's disability its Respondents job to provide CP reasonable accommodations when told that it's too hot and Linda keeps taunting CP.

Management is supposed to sit Linda down and tell her it's not ok to taunt a veteran and that Linda's behavior must cease immediately.  Sarah never investigated to protect CP and Linda would bring in fart spray to try to make fun of CP.   On second shift by the time CP got to work the hotel was extra toasty, but CP had no way of turning down the heat and didn't know where the new thermostat box was located.  The goal was to make CP sweat so Linda could taunt her and say she had a really bad smell.  Sarah was informed of CP's disability; CP ask for a room fan and that accommodation was never implemented to help CP.   Veterans have rights in the workplace retaliation against a veteran while exercising their rights is illegal.   Respondents state that CP was not meeting the company's expectations, well "IF CP" wasn't meeting their expectations it was because Respondents didn't accommodate CP's reasonable accommodations, and it effected CP's ability to respond. As respondents stated, CP can't communicate and express herself, while being in their environment.   (This is not admission that I didn't meet expectations, its commonwealths admission that they didn't accommodate CP).

XII.   **RACE DISCRIMINATION, WRONGFUL TERMINATION, HOSTILE WORK ENVIRONMENT**

 In the state of Indiana all employees are considered "AT WILL" meaning they can be terminated at any time for "LEGAL REASONS".  However, this does not mean an employer can fire an employee for illegal reasons or because you don't like their answers to their questions and then call them a liar.  The employer must have a true basis, because otherwise that is considered illegal discriminatory, wrongful termination and creates a hostile work environment.

CP continued to complain to Sarah about issues in the workplace and as new manager she looked at CP (AA) as a troublemaker and reported her to human resources instead of dealing with the issues herself.   Being fired after complaining about unfair treatment is illegal.   Being fired without disciplinary procedures is illegal.   Being fired for discrimination and for filing a protected activity is illegal.  The EEOC recommends to record everything and keep good records of conversations and to date and time everything in which I did in text messages and emails sent to Sarah and ultimately sent recordings to Kim Jennings by email.   The EEOC recommends to keep a  copy of the company handbook and become knowledgeable of their procedures and policies, in which CP has followed the guidelines set forth in the company handbook.   EEOC recommends that if you feel that you are terminated due to discrimination and retaliation to file a complaint and seek legal advice.

Wrongful dismissal/ wrongful termination occurred when this employer terminated CP, cheated CP out of her pay, refused to give CP unemployment benefits, ostracized me in the workplace, pulled guns on CP, discriminated against CP due to CP age and overall disliked for color and race and offered outsiders positions before hiring within.   CP was not given proper notice, CP was brought into a meeting and bullied by management as they did not have CP sign anything in lieu of a termination or a disciplinary action and their conduct during the meeting was discriminatory and harassing as they continued to deny CP her wages.  Commonwealth did not offer CP health care coverage after being fired and during employment could not access my account to even sign up for proper benefits as they continued to change my password.   So, no health care provided as well as unemployment benefits.   CP documented complaints by telling management that there was a problem, and they refused to investigate those problems because

the complaint was made on white woman (Linda).    **_Ms. Jennigs stated in the meeting that she was aware of the EEOC filing and that it was not going to work, the timing of the EEOC complaint and the Retaliation complaint are not that far off, which means that CP was fired due to filing a protected activity._**

Circumstantial evidence is allowed to protect my case, because without a tape recording the managers was going to lie on CP and make her out to be a troublemaker.  I reported my concerns to management, and they ignored them without any feedback.  I reported to Sarah that Linda is late in the mornings coming into work, and Sarah stated no… the time clock doesn't show that, well if she is writing in her time instead of punching in, of course it doesn't show that, but CP and Bret have complained about Lindas tardiness, and Bret stated she has been so late that at times he wanted to abandoned the building.  Bret owns his on business and CP is a schoolteacher during the day.  So, our time needs to be respected as we have other responsibilities.  Sarah in this case is still treating and favoring Linda.  Check her clock punches verses her signed signature in the mornings.   Sarah said you're not officially late until 5 mins after; well Linda is not being forthcoming with the truth on her arrival times as Bret is a witness.  This is another incident where Sarah (manager) shows Linda favoritism.

A qualified supervisor is required to investigate allegations of wrongdoing, especially when those allegations involve harassment and discrimination.  But due to my race when I reported, it was ignored by management.  Linda was basically picking at CP and CP ignored her continuously, the more CP ignored her the more aggressive she became in harassing CP.  It is a legal obligation that complaints are heard regardless of whether you believe them or not. If the behavior continues then an investigation in the manner needs to happen immediately.   On the day CP was fired Ms. Jennings was in a bad mood she stated she couldn't make the meeting face

to face because she fell and busted her chin.   Ms. Jennings was very agitated and short with CP, she clearly stated I was being dishonest.  Where are factual and accusatory fact finding coming from, it sounds more like an assumption and because of my race, color, age, sex, the respondents shows not to effectively pursue an investigation and shamed CP by letting her go.   CP had no disciplinary actions nothing negative going on for CP to be fired. *There was no adverse action going on that would have initiated CP to be fired prior to 10-01-24.*

## XIII.         Age Discrimination and victimization

In the United States, the age discrimination in employment act (ADEA) of 1967 prohibits age discrimination against individuals who are age 40 years of age or older.   During the time Sarah Orellana became manager she came in and made some changes after Patricia resigning or being fired we had no clerk team lead.  Sarah was looking for assistant and she picked Lauren a new employee, who was a young lady that was hired on last with our crew.  A lot of the staff was bothered by the fact that the job was not offered to all it was given to Lauren because her dad is friends with the owners.  CP was never given a chance for promotion as well as other older counterparts.   But due to my race I don't feel the opportunity would have ever been offered, with all the hard work CP put into this company since grand opening.   The ADEA prohibits employers from discriminating against individuals based on their age in any aspect of employment, including hiring, firing, pay, benefits, promotions and training.

CP feels that she was retaliated against because she asked why she wasn't selected for this position. This is retaliation to fire CP because she wants the same rights as others.  CP feels that Linda and Lauren was being treated favorably with higher positions that was not offered to all. Age discrimination is prevalent with Linda because she is an older worker who was chosen to take day shift lead without asking others that are more suitable for that shift and position.   Salary

discrimination plays a role as Lauren and Linda was paid more than CP.   So, discrimination works both ways for a younger person being treated more favorably. And an older person being treated more favorably than a younger employee.

### XIV.   CP meet her prima facia burden under title VII.  Commonwealth actions was unlawful and negligent.

CP has proven her prima facia burden, as CP was a member of a protected class.   During that time frame CP suffered an adverse action from CP's employer that similar situated employees outside the protected class were treated differently.   CP's evidence doesn't need to be conclusive; it just needs to be enough to create a reasonable doubt in the courts mind. Respondents insulted CP in their response and said that CP could not present information, and basically added false information hoping that CP would not respond.  CP has established her prima facia burden, so now CP is shifting the burden to opposing party to present evidence that CP was a bad employee and needed to be fired.  Ms. Jennings states that CP was giving her misleading information without a factual basis.  CP has suffered depression throughout this case, due to the fact that the respondents breached their duties and caused CP injury.  Management had a legal duty to investigate and to provide a conducive working environment.  Due to those elements the respondents are negligent, and CP has proven her prima facia case.

**Conclusion**

Based on the foregoing, Cp respectfully request that the commission moves forward with my charge and enter a finding of probable cause.

Respectfully submitted,

Xena Ames -Charging Party _____ date _____

317-799-8992

Common wealth Hotels,
Robert Hudson, Attorney @ Law
Frost Brown Todd LLP.

100 E. River Center BLVd. Ste 1050
Covington, KY
                    41011