UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| XENA K. AMES,<br><br>Plaintiff,<br><br>v.<br><br>COMMON WEALTH HOTEL,<br><br>Defendant. | ) | No. 1:25-cv-00869-SEB-MG |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment challenging the legal sufficiency of *pro se* Plaintiff Xena K. Ames's ("Ms. Ames")[1] Title VII complaint against her former employer, Commonwealth Hotel ("Commonwealth"), asserting claims for race-based and retaliatory termination of employment for her having filed a claim with the Equal Employment Opportunity Commission ("EEOC"), which constituted protected activity on her part. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**. Dkt. 48.

**BACKGROUND**

**I. Procedural History**

We must begin by deciphering the somewhat confusing procedural history of this litigation. Ms. Ames initiated this litigation on May 5, 2025, asserting a laundry list of employment discrimination claims based on her race, color, gender/sex, religion, national origin, disability, and age, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (race, color, gender/sex, religion, national origin); the Americans with Disabilities in Employment Act

[1] On July 21, 2026, counsel entered an appearance on Ms. Ames's behalf. Dkts. 79, 80. Ms. Ames has proceeded *pro se* throughout all relevant portions of this litigation, however.

of 1967 ("ADA"), 29 U.S.C. § 12112 *et seq.* (disability); and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.* (age). As an African American woman, Ms. Ames sought relief for having been subjected to a hostile work environment, denied a promotion, made to suffer from inequal terms and conditions of employment, and retaliated against by being wrongfully terminated from her employment with Commonwealth.

On August 11, 2025, Commonwealth moved for partial dismissal of the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 20. On August 29, 2025, as Commonwealth's motion to dismiss remained pending, Ms. Ames moved for summary judgment. Dkt. 30. Approximately one week later, on September 8, 2025, we denied without prejudice Ms. Ames's summary judgment motion, pursuant to Rule 56(d), because Commonwealth established that additional time was necessary to conduct fact discovery, which had not yet occurred in the early stages of litigation. Dkts. 32, 33, 35. *See also* Fed. R. Civ. P. 56(d) (stating that the court may "deny" a motion for summary judgment where the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition").

On January 23, 2026, we issued an Order Granting Defendant's Motion for Partial Dismissal. Dkt. 66. Confronted as we were by a hodge-podge of court filings by and between the parties, we sorted through the confusion noting that Ms. Ames's Complaint consisted of allegations encompassed within two successive charges of discrimination that Ms. Ames had previously filed with the EEOC relating to her employment with Commonwealth. The complaints encompassed in her first charge, filed on August 29, 2024, arose during her employment tenure and included allegations of racial harassment and age discrimination. A notice of Ms. Ames's right to sue issued on October 25, 2024, thereby triggering the statutory 90-day deadline to file suit. Ms. Ames did not file suit based on the claims she had raised in her first EEOC complaint. Her failure to file a timely

lawsuit based on the claims asserted in the first charge of discrimination subjected her to a forfeiture of any judicial recovery.

Thereafter, on November 26, 2024, following the termination of her employment on October 1, 2024, Ms. Ames filed a second EEOC charge of discrimination repeating in substance many if not all of her prior allegations of workplace discrimination, but including a new claim relating to her termination—that she was wrongfully discharged based on her race and in retaliation for having engaged in the protected activity of filing an EEOC complaint. The EEOC issued its right to sue notice on this second claim on April 29, 2025, and this time Ms. Ames responded by timely filing this lawsuit on May 5, 2025, against Commonwealth. Her complaint, however, included claims from her first as well as the two new claims in her second charge of discrimination.

Commonwealth's request for partial dismissal of Ms. Ames's claims, pursuant to Rule 12(b)(6), was directed to all of her discrimination claims except for the wrongful discharge based on her race and her retaliation claim. Dkt. 20. The Court granted Commonwealth's request for partial dismissal on January 23, 2026, agreeing that her prior claims had been forfeited but her racial discrimination discharge and retaliation claims remained for resolution. Dkt. 66.

Prior to the issuance of our ruling on the Motion for Partial Dismissal, Commonwealth filed on January 5, 2026, a Motion for Summary Judgment directed at Ms. Ames's two surviving discrimination claims relating to her termination of employment. Dkt. 48. On January 13, 2026, Ms. Ames submitted two responses to Commonwealth's motion, the first she captioned a "Motion for Reconsideration," dkt. 59, and the second she designated as her response in opposition, dkt. 60. Nearly a week later, on January 21, 2026, Ms. Ames filed a "Second Motion for Reconsideration for Summary Judgment." Dkt. 64. (Commonwealth timely opposed both so-called motions

for reconsideration. Dkts. 63, 65.) Commonwealth's Reply brief in support of its Summary Judgment motion was filed on January 22, 2026. Dkt. 62.

On January 28, 2026, Ms. Ames filed a "Statement of Genuine Issues of Material Facts in Dispute in Support of [Her Response in] Opposition to Motion for Summary Judgment." Dkt. 68. Arguing that this statement was an impermissible surreply, Commonwealth moved to strike the brief and memorandum. Dkt. 69. Ms. Ames has filed no response to Commonwealth's motion to strike, and the time for doing so has long since passed.

Commonwealth's Motion for Summary Judgment is now fully briefed and ripe for decision as to Ms. Ames's race-based termination and retaliation claims. (Also pending is Commonwealth's Motion to Strike.) We deem the filings by Ms. Ames captioned "Motions to Reconsider," dkts. 59, 64, to be responses to the motion for summary judgment; despite their titles, they will not be ruled on as separate motions.[2]

## II. Factual Background

Ms. Ames did not provide Commonwealth or the Court a chronology of events leading up to the filing of her lawsuit, nor did she include other factual details relating to her various claims of employment discrimination, such as her age, the nature of her disability, a description of her job

[2] To the extent that Ms. Ames seeks reconsideration of our September 8, 2025, order denying without prejudice her motion for summary judgment, she has failed to demonstrate that reconsideration is warranted. "Motions to reconsider serve a limited function, to be used 'where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.' " *Davis v. Carmel Clay Schs.*, 286 F.R.D. 411, 412 (S.D. Ind. 2012) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)) (internal citation omitted). Neither of Ms. Ames's motions to reconsider cogently articulates any such circumstances. Rather, each reflects her continued disagreement with Commonwealth's supporting evidence as well as her apparent dissatisfaction with Commonwealth's discovery production. These circumstances do not warrant reconsideration. In light of Ms. Ames's *pro se* status, we shall nonetheless construe these supplemental filings liberally and treat them as responses to Commonwealth's summary judgment motion.

responsibilities, the names of her co-workers and supervisors along with a summary of their job responsibilities, etc. We were thus required to cull her thirty-eight page complaint to extract the relevant background facts and circumstances and to rely on Commonwealth's uncontroverted factual submissions to round out the details.

From our search of the record before us, we gleaned that Ms. Ames was apparently hired by Commonwealth on February 15, 2024, to fill the position of night auditor, which job she held until her termination ten months later on October 1, 2024. (As previously noted, her first complaint was filed with the EEOC on August 29, 2024, and a second EEOC complaint on November 26, 2024, approximately two months following her termination.) As explained in our prior order, the Complaint filed on May 5, 2025, raises claims for wrongful termination based on her race and in retaliation for having engaged in protected activity by filing her EEOC complaint, which we resolve below.

Ms. Ames's prolix account of the underlying facts reveals a workplace fraught with employee conflicts, ongoing disagreements between her and co-workers, various offenses and slights she allegedly suffered at the hands of fellow employees, which discriminatory behaviors, she claims, were racially motivated against her as an African American woman and for which she sought vindication through her EEOC complaints. She maintains that during her ten-month tenure she "continuously reported incidents of discrimination, harassment and retaliation" that went unheeded or ignored or resulted in her being called a liar, and that non-African American employees were consistently treated more favorably. Compl. 18–19, dkt. 1. She further alleges that Commonwealth "started shortening [her] pay to have her removed as a form of retaliation for filing a [sic] EEOC complaint." *Id.* at 22. Finally, she maintains that "Commonwealth did not have a legitimate, non-discriminatory, non-retaliatory reason, to fire [her]." *Id.* at 21.

Commonwealth has submitted two affidavits—one by Kimberly Jennings ("Ms. Jennings"), the other by Sarah Orellana ("Ms. Orellana")—in support of its Motion for Summary Judgment and as a counter to Ms. Ames's cited discriminatory reasons for her termination of employment. *See generally* Jennings Aff., dkt. 48-1; Orellana Aff., dkt. 48-2. Ms. Jennings states in her affidavit that she served as Commonwealth's Vice President of Human Resources during the period of Ms. Ames's employment. Jennings Aff. ¶ 1, dkt. 48-1. She explains that Commonwealth had a personnel policy prohibiting dishonesty by employees and that, on September 11, 2024, Ms. Ames made "factually specific racial statements" about a co-worker which, when Ms. Jennings and Ms. Orellana met with Ms. Ames in an effort to investigate her allegations, Ms. Ames explained by accusing her fellow employee of "merely [being] at her desk with a white cleaning bottle, which [Ms. Ames] described as being subliminally racist." *Id.* ¶¶ 2–4. Ms. Ames regarded the possession of the white cleaning bottle by her co-worker as a "subliminal" white power gesture. *Id.* ¶ 4. In addition, as recounted in Ms. Jennings's affidavit, Ms. Ames accused her co-worker of discussing with other employees certain disclosures (allegedly) previously made by Ms. Ames to her regarding Ms. Ames's having previously been sexually assaulted. *Id.* ¶ 3. When Ms. Jennings requested that Ms. Ames explain the underlying factual basis for this allegation, Ms. Ames again "responded that her belief was subliminal" and that her co-worker's alleged harmful behavior was also "subliminal." *Id.* ¶ 5.

Thereafter, Ms. Jennings, in an effort to investigate Ms. Ames's allegations, confronted the co-worker about Ms. Ames's accusations of having engaged in subliminal racist behaviors, which the co-worker totally denied, responding that she had never engaged in any such inappropriate behaviors towards Ms. Ames, including racially motivated attacks. *Id.* ¶ 6.

Ms. Jennings explained in her sworn affidavit that she was the decision maker with respect to Ms. Ames's firing, and that the following summarizes her decision to terminate Ms. Ames's employment:

> I concluded that [Ms. Ames] had misled or had become dishonest about the above specific statements of fact. These were negative statements about a co-worker. I reached the conclusion of dishonesty because [Ms. Ames] had articulated her complaint as statements of fact, then essentially admitted she had no facts to support the statements. Moreover, [she] offered non-responsive, non-sense answers to direct questions about her statements of fact. . . . [Ms. Ames's] repeated reliance on the term "subliminal" made no sense.

*Id.* ¶¶ 7–8.

Continuing, Ms. Jennings stated in her affidavit: "I decided to discharge [Ms. Ames] and Ms. Orellana concurred. The fact that race was a subject of [Ms. Ames's] complaint was irrelevant to the outcome. The reasonable belief that dishonest, misleading, negative statements of fact had been made against a co-employee was the reason for discharge." *Id.* ¶ 9.

Ms. Jennings concluded: "I did not terminate [Ms. Ames] based on a mere disagreement with allegations of perceived racism. . . . I have never terminated an employee because I merely disagreed about an allegation of racism. [Ms. Ames] presented an unprecedented fact pattern because she articulated nothing rational to support her statements that the conduct in fact occurred, which supported my conclusion that she had been dishonest and/or had misled us about [the co-worker]." *Id.* ¶ 11.

Ms. Orellana's affidavit mirrors the factual averments contained in Ms. Jennings' affidavit. Ms. Orellana was general manager for Commonwealth and worked at the hotel where Ms. Ames was employed. In the final paragraph of Ms. Orellana's sworn statement, she stated: "I agreed with Ms. Jennings that [Ms. Ames] had misled or had been dishonest during our interview. [Ms. Ames] just kept saying subliminal, which has nothing to do with whether, for example, [the co-worker]

made statements about a [sexual] assault. Guest Service Agents like [the co-worker] at times hold white cleaning bottles because they use them to clean. This has nothing to do with race or white power, and it was misleading for [Ms. Ames] to have said so." Orellana Aff. ¶ 6, dkt. 48-2.

In brief, the two employees of Commonwealth who made the decision to terminate Ms. Ames's employment and then proceeded to do so based their action on Ms. Ames's dishonesty and false allegations against her co-worker whom she accused of subliminal racism. The instant record does not otherwise reveal a connection between Ms. Ames's firing and her pending EEOC complaint.

Ms. Ames has responded to the factual assertions of Ms. Jennings and Ms. Orellana by claiming that their statements are untrue, and, in any event, her workplace complaints of racism were never investigated by Commonwealth because it sought to protect the co-worker who was white at the expense of Ms. Ames. Ms. Ames maintains that in that way the co-worker was treated more favorably than she was. She argues, but without referencing any specific rebuttal facts to the contrary, that the two Affiants' statements are not only false, but that "defendant's management team bullied [her], over talked [her], demoralized [her] in the meeting on October 1, 2024, that resulted in an unlawful termination while protected by the EEOC." Dkt. 60 at 2.

**SUMMARY JUDGMENT LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because summary judgment requires "no *genuine* issue of *material* fact," "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247−48 (1986) (emphasis in original). Material facts are those that "might affect the outcome of the suit,"

and a dispute of material fact is genuine when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

As the "put up or shut up" moment in a lawsuit, summary judgment requires parties to "show what evidence [they] ha[ve] that would convince the trier of fact" to find in their favor on any disputed elements. *Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014). Because summary judgment is not "a vehicle for resolving factual disputes," the district court need not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (citing *Anderson,* 477 U.S. at 249–50).

## LEGAL ANALYSIS

### I. Commonwealth's Motion to Strike

Commonwealth has moved to strike Ms. Ames's January 28, 2026, "Statement of Genuine Issues of Material Facts in Dispute in Support of Opposition to Motion for Summary Judgment," arguing that this submission constitutes an improper surreply under our Local Rules, which provide, in relevant part, as follows:

> A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response. The surreply must be filed within 7 days after the movant serves the reply and must be limited to the new evidence and objections.

S.D. Ind. L.R. 56-1(d). Ms. Ames has filed no response to Commonwealth's Motion to Strike, and the time for doing so has long since passed.

Commonwealth contends, and we agree, that its reply brief neither cited new evidence nor objected to the admissibility of evidence cited in Ms. Ames's (various) response(s). Under these circumstances, we have little trouble concluding that Ms. Ames's filing of a surreply brief was not

permitted by our Local Rules. Accordingly, Commonwealth's Motion to Strike shall be **granted**, dkt. 69, and Ms. Ames's "Statement of Genuine Issues of Material Facts in Dispute in Support of Opposition to Motion for Summary Judgment," dkt. 68 shall be **stricken**.

## II. Commonwealth's Motion for Summary Judgment

Before turning to the merits of Ms. Ames's legal claims, we note that, although she has criticized both the form and content of the Ms. Jennings's and Ms. Orellana's Affidavits, Ms. Ames has failed to proffer any evidence to counter the factual allegations set out therein as submitted by Commonwealth in support of its motion for summary judgment. More specifically, Ms. Ames has failed to submit any item of admissible evidence showing there is a material issue for trial. "To survive a motion for summary judgment, the non-moving party"—counseled and uncounseled alike—"must set forth specific, admissible evidence showing that there is a material issue for trial." *Henderson v. GEO Grp., Inc.*, No. 1:17-cv-01332-SEB-MJD, 2018 WL 4110856, at *1 (S.D. Ind. Aug. 29, 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of h[er] pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. *See also Anderson v. Street*, 104 F.4th 646 (7th Cir. 2024) (stating that "generalized and unsupported allegations cannot create a genuine dispute"). Our Local Rules similarly provide that "the facts as claims *and supported by admissible evidence* by the movant are admitted without controversy" unless the non-movant *specifically* controverts the facts . . . with admissible evidence." S.D. Ind. L.R. 56-1(f) (emphasis added). "A party must support each fact the party asserts in a brief *with a citation*" that "refer[s] to a page or paragraph number or otherwise

similarly specif[ies] where the relevant information can be found in the supporting evidence." S.D. Ind. L.R. 56-1(e) (emphasis added).[3]

Because Commonwealth's motion for summary judgment and accompanying memorandum are supported by admissible evidence and Ms. Ames has failed to dispute those factual assertions with admissible evidence and to raise any genuine issue of material fact to show a causal connection between a protected activity and/or her race and her discharge, as we discuss more fully below, Commonwealth is entitled to summary judgment in its favor.

**A. Retaliatory Discharge**

"Title VII's anti-retaliation provision provides that it is unlawful for an employer to discriminate against its employee because the employee filed a complaint or participated in an investigation of an unlawful employment practice." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020) (citing 42 U.S.C. § 2000e-3(a)). To prove unlawful retaliation, Ms. Ames must adduce sufficient evidence from which a reasonable jury could conclude that (1) she engaged in a protected activity within the meaning of Title VII; (2) she suffered an adverse employment action; and (3) a but-for causal connection exists between the two. *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019). "When the plaintiff establishes a prima facie case of

[3] Throughout her filings, Ms. Ames repeatedly references her August 29, 2025, Motion for Summary Judgment, which we previously denied without prejudice, pursuant to Federal Rule of Civil Procedure 56(d). Dkt. 30. Ms. Ames did not renew her motion for summary judgment, though we have nevertheless reviewed her original submission in the interest of completeness. In so doing, we discovered that her factual assertions lack any supporting evidentiary citations, as required by our summary judgment rules. To that end, her countervailing assertions of fact, which she has interposed haphazardly throughout her various submissions, necessarily fail for lack of proof. Similarly, we note that Ms. Ames's January 13, 2026, response in opposition to Commonwealth's motion for summary judgment asserts that Ms. Ames "has submitted voice recordings into evidence" that "prove the reality of the conversation" that occurred on October 1, 2024. Dkt. 60 at 2. A review of the instant record reveals no such alleged voice recording. We, therefore, do not credit Ms. Ames's unsubstantiated references thereto.

retaliation, an employer may produce evidence which, if taken as true, would permit the conclusion that it had a legitimate non-discriminatory reason for taking the adverse employment action." *Robertson*, 949 F.3d at 378. "If the employer meets this burden, the plaintiff, to avoid summary judgment, then must produce evidence that would permit a trier of fact to establish, by a preponderance of the evidence, that the legitimate reasons offered by the employer were not its true reasons but were a pretext for discrimination" *Id.*

Here, Commonwealth challenges the first and third elements of Ms. Ames's prima facie case. That is, Commonwealth contends that Ms. Ames cannot establish that she engaged in a protected activity and/or that her engagement in any alleged protected activity caused her termination. We address each challenged element *seriatim*.

*1. Protected Activity*

Although Ms. Ames's first charge of discrimination undoubtedly qualifies as a protected activity, *Li v. Fresenius Kabi USA, LLC*, 110 F.4th 988, 997 (7th Cir. 2024), Commonwealth addresses separately another potential protected activity: namely, Ms. Ames's reporting to management about her co-worker's allegedly racist conduct. *See Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 674 (7th Cir. 2011) (noting that "an informal complaint may constitute protected activity for purposes of retaliation claims"). Commonwealth argues that Ms. Ames did not engage in a protected activity by reporting her co-worker's alleged racism towards her because no reasonable jury could find that Ms. Ames "reasonably believed in good faith that the practice she opposed violated Title VII." *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002) (citation modified). It is well-established law that "utterly baseless claims do not receive protection under Title VII." *Brooks v. City of Kankakee, Illinois*, 7 F.4th 649, 660 (7th Cir. 2021). Indeed, the Seventh Circuit has explained:

> The purpose of requiring that plaintiffs reasonably believe in good faith that they have suffered discrimination is clear. Title VII was designed to protect the rights of employees who in good faith protest the discrimination they believe they have suffered and to ensure that such employees remain free from reprisals or retaliatory conduct. Title VII was not designed to "arm employees with a tactical coercive weapon" under which employees can make baseless claims simply to "advance their own retaliatory motives and strategies."

*Id.* (quoting *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 890 (7th Cir. 2004)). "Unless a claim is completely groundless, there is nothing wrong with disciplining an employee for filing frivolous complaints." *Id.* (citation modified).

Based on these legal principles, Commonwealth argues that Ms. Ames did not engage in a statutorily protected activity when she made serious allegations against her co-worker that lacked any legitimate factual basis. Dkt. 51 at 5. As detailed in Ms. Jennings's Affidavit, on September 11, 2024, Ms. Ames alleged that a co-worker used a "white power gesture," which Ms. Ames later clarified as being in reference to "a white cleaning bottle" that she perceived as being "subliminally racist." Jennings Aff. ¶ 4, dkt. 48-1. Ms. Ames also alleged that the same co-worker spread harmful rumors about her having experienced a sexual assault. *Id.* ¶ 5. When Ms. Jennings asked Ms. Ames to provide further details, Ms. Ames "responded that her belief was 'subliminal.' " *Id.* Based on Ms. Ames's nonresponsive answers, Ms. Jennings (and Ms. Orellana) reasonably concluded that Ms. Ames's allegations were misleading and dishonest, in violation of Commonwealth's employment policies. No reasonable jury viewing this (unrefuted) evidence in the light most favorable to Ms. Ames could conclude that Ms. Ames reasonably and in good faith believed that she suffered race-based discrimination. Thus, Ms. Ames's September 11, 2024, complaint about her coworker "do[es] not receive protection under Title VII." *Brooks*, 7 F.th at 660.

*2. But-for Causation*

Although Ms. Ames's allegation that her coworker was racist towards her does not constitute a protected activity, Commonwealth recognizes that Ms. Ames did file her first charge of discrimination in August 2024. *See* dkt. 51 at 3. Because filing a charge of discrimination qualifies as a protected activity, we must assess whether Ms. Ames has adduced evidence that her first charge was the but-for cause of her termination. *Li*, 110 F.4th at 997. Commonwealth argues that Ms. Ames cannot establish causation because an intervening event occurred between Ms. Ames's filing of her first charge of discrimination and her termination; to wit, Ms. Ames made statements to Ms. Jennings that Ms. Jennings concluded were dishonest and misleading, in contravention of company policy.[4]

Approximately one month elapsed between Ms. Ames's August 29, 2024, charge of discrimination and her October 1, 2024, termination. Ms. Ames's retaliation theory thus hinges on the temporal proximity between her protected activity and her discharge. "Suspicious timing alone rarely establishes causation, but if there is corroborating evidence that supports an inference of causation, suspicious timing may permit a plaintiff to survive summary judgment." *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015). "The reason is obvious: '[s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment.' " *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (quoting *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011)).

[4] "Knowledge of the protected activity is necessary to show causation for a retaliation claim." *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 915 (7th Cir. 2022). In this case, neither Commonwealth nor Ms. Ames has addressed whether the decisionmakers, Ms. Jennings and Ms. Orellana, knew about Ms. Ames's first charge of discrimination.

Here, Ms. Ames has failed to adduce corroborating evidence supporting an inference of causation between her initial charge of discrimination and her termination. That approximately one month elapsed between her protected activity and her termination does not, without more, create a dispute of material fact about Commonwealth's non-discriminatory reasons for her termination. *See Kidwell*, 679 F.3d at 966–67.

Similarly, Commonwealth has adduced persuasive evidence that a significant intervening event occurred between Ms. Ames's protected activity and her discharge: On October 1, 2024, prior to her termination, Ms. Ames made statements that Ms. Jennings and Ms. Orellana sincerely believed were dishonest and misleading, in violation of company policy. It is well-established law that an employee's violation of her employer's policies can constitute a significant intervening event between a protected activity and a discharge that disrupts the causal chain and defeats an inference of causation. *See Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 937 (7th Cir. 2022).

Here, Ms. Jennings's Affidavit establishes that Commonwealth prohibits employee dishonesty and that dishonesty is among the terminable offenses set forth in its handbook. Jennings Aff. ¶ 2, dkt. 48-1. Ms. Ames filed her initial charge of discrimination on August 29, 2024. Thereafter, on September 11, 2024, she reported to Commonwealth's Human Resources that her coworker had engaged in white power hand gestures and had spread harmful rumors about her. *Id.* ¶ 3. On October 1, 2024, after meeting with Ms. Ames to investigate her allegations, Ms. Jennings and Ms. Orellana concluded that Ms. Ames's inability (or unwillingness) to articulate any legitimate factual basis supporting her claims demonstrated that Ms. Ames's complaint was frivolous and dishonest, in violation of company policy. *Id.* ¶¶ 4, 7. Ms. Jennings decided that Ms. Ames's dishonesty warranted her termination of employment—hence, Ms. Ames's discharge on that same day. *Id.* ¶ 9. "Far from supporting a causal connection between [Ms. Ames's] termination" and her initial charge

of discrimination, this timeline of events supports Commonwealth's asserted link between Ms. Ames's dishonesty, in violation of company policy, and her termination. *Parker*, 39 F.4th at 937.

Because Ms. Ames has failed to adduce evidence that she engaged in a protected activity that was the but-for cause of her termination, Commonwealth's motion for summary judgment shall be **granted** as to her retaliation claim.

### B. Race Discrimination

Ms. Ames avers that her termination constitutes unlawful race discrimination. To establish a *prima facie* claim that her termination was racially discriminatory, Ms. Ames must establish: (1) that she is a member of a protected class; (2) that she performed her job to her employer's expectations; (3) that she suffered an adverse employment action; and (4) that one or more similarly situated individuals outside her protected class received better treatment. *Anderson*, 104 F.4th at 652. "Regardless of the framework, we ultimately consider all admissible evidence as a whole 'and determine whether a reasonable jury could find that the plaintiff suffered an adverse action because of [her] protected characteristics.' " *Id.* at 652–53 (quoting *Singmuongthong v. Bowen*, 77 F.4th 503, 508 (7th Cir. 2023)).

In this case, Commonwealth asserts that Ms. Ames's discrimination claim fails as a matter of law because Ms. Ames did not meet her employer's legitimate expectations, as evidenced by the frivolous complaint she made against her coworker, and because Ms. Ames cannot identify any similarly situated employee who was treated more favorably than she. As discussed above, the undisputed record evidence supports the finding that Ms. Jennings and Ms. Orellana sincerely believed that Ms. Ames's prevarications during their October 1st meeting constituted dishonest and misleading behavior that violated Commonwealth's legitimate expectations of its employees. Ms. Ames has adduced no contrary evidence indicating that she was, in fact, meeting Commonwealth's

employment expectations. Similarly, Ms. Ames has identified no similarly situated employee such that a reasonable jury could conclude that Commonwealth's alleged reason for Ms. Ames's "differential treatment" was pretext for discrimination. *Id.* at 635. Ms. Ames, therefore, has failed to establish the *prima facie* elements of race discrimination.

Evaluating the record evidence "as a whole," we conclude Ms. Ames has introduced no evidence whatsoever that would permit a reasonable factfinder to conclude that her first EEOC charge or her race caused the discharge of which she complains. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). Because Ms. Ames has failed to present "enough evidence," never mind *any* evidence, "to allow the jury to find in [her] favor," *id.* at 957–58 (citation modified), Commonwealth's motion for summary judgment must and therefore shall be **granted** in its entirety.

## CONCLUSION

For these reasons, Commonwealth's Motion for Summary Judgment is hereby **GRANTED** in its entirety. Dkt. 48.

Additionally, Commonwealth's Motion to Strike is **GRANTED**. Dkt. 69. Ms. Ames's "Statement of Genuine Issues of Material Facts in Dispute in Support of Opposition to Motion for Summary Judgment" is hereby **STRICKEN**. Dkt. 68.

All other motions are hereby **DENIED**. Dkt. 59, 64.

Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date: 9/23/2026

Sarah Evans Barker

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER LLC (Indianapolis)
ad@bdlegal.com

Brett Alexander Hession
FBT Gibbons LLP
bhession@fbtgibbons.com

Robert D. Hudson
Frost Brown Todd LLP
rhudson@fbtlaw.com

Madison Monfreda
Biesecker, Dutkanych, & Macer LLC
mmonfreda@bdlegal.com